UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RICHARD MILLS,

            Petitioner,

    -vs-

JOHN B. LEMPKE,

            Respondent.

**DECISION and ORDER
No. 11-CV-0440(MAT)**

_____

## I.   Introduction

Proceeding pro se, Richard Mills ("Mills" or "Petitioner") has filed a petition for a writ of habeas corpus petition pursuant to 28 U.S.C. § 2254 alleging that he is being held in Respondent's custody in violation of his federal constitutional rights. Petitioner is incarcerated as the result of a judgment originally entered on December 16, 2004, following a jury trial in Genesee County Court (Noonan, J.) of New York State Supreme Court. Petitioner was convicted of Attempted Murder in the First Degree (New York Penal Law ("P.L.") §§ 110.00/125.27(1)(a)(i)), Attempted Assault in the First Degree (P.L. §§ 110.00/120.10(1)), Reckless Endangerment in the First Degree (P.L. § 120.25), two counts of Criminal Possession of a Weapon in the Third Degree (P.L. § 265.02(1)), and Criminal Possession of Marijuana in the Third Degree (P.L. § 221.20).

## II. Factual Background

### A. Petitioner's 2004 Trial

For a summary of the evidence from Mills' 2004 trial and post-conviction proceedings, the Court refers to, and incorporates by reference herein, Magistrate Judge Bianchini's Report and Recommendation in <u>Mills v. Poole</u>, 1:06-cv-00842-RJA-VEB (W.D.N.Y. May 14, 2008), <u>adopted</u> <u>in</u> <u>full</u>, 1:06-cv-00842-RJA-VEB (W.D.N.Y. July 1, 2008). A copy of the Report and Recommendation is attached hereto as Appendix I.

### B. Petitioner's 2011 Resentencing

In 2011, Petitioner was resentenced with regard to the attempted first degree assault charge, as to which he originally had been sentenced to a determinate term of 15 years with no term of post-release supervision ("PRS"). Under New York law, however, where a defendant is sentenced to a determinate prison term, the sentencing court is required to impose a period of post-release supervision. <u>See</u> N.Y. PENAL LAW § 70.45. Pursuant to New York Corrections Law § 601-d, the New York State Department of Corrections and Community Supervision ("DOCCS") notified the trial court of the defect in Petitioner's sentence.

By order dated January 31, 2011, the trial court, pursuant to P.L. § 70.85 and with the consent of the Genesee County District Attorney, re-imposed the original 15-year determinate sentence for

the attempted first degree assault conviction, without imposing any period of PRS. Petitioner's remaining sentences were undisturbed.

Petitioner filed a motion for reargument with respect to the resentencing on the grounds that he was denied his right to appear in court and to the assistance of counsel. Petitioner repeated also argued that Judge Noonan should have recused himself due to his alleged business and familial ties to various Genesee County officials.

On March 28, 2011, Judge Noonan denied Petitioner's motion, recognizing that "the reimposition of the original sentence was statutorily authorized, and was warranted in this case inasmuch as the additional post-release supervision would have been redundant [to] the lifetime parole supervision mandated under [Petitioner's] [a]ttempted [m]urder conviction." Respondent's Exhibit ("Resp't Ex.") TT at 2. Judge Noonan further concluded that "[s]ince [Petitioner] cannot be considered aggrieved by the . . . determination not to enhance his determinate sentence, such transportation, hearing and appointment of counsel would have been [an] unnecessary expenditure of public resources." Id.

On June 27, 2011, Petitioner filed a pro se motion to vacate the judgment and to set aside his sentence pursuant to New York Criminal Procedure Law ("C.P.L.") §§ 440.10 and 440.20, based on Judge Noonan's refusal to produce him and to assign counsel for the purpose of resentencing him on the attempted first degree assault

conviction. On August 23, 2011, Petitioner added a claim asserting a violation of the Ex Post Facto Clause of the federal Constitution.

On September 21, 2011, Judge Noonan denied the motion, noting that "resentencing under Correction Law § 601-d implicates the post-judgment imposition of post-release supervision, and does not afford resentencing de novo." Resp't Ex. YY (citing People v. Lingle, 16 N.Y.3d 621, 636 (2011) ("The defendant's right to appeal [a resentencing under P.L. § 70.85] is limited to the correction of errors or the abuse of discretion at the resentencing proceeding. Since the resentencing court is not authorized to lower the prison sentence . . . , appellate courts are likewise unauthorized to do this—i.e., the resentencing court's failure to consider a lesser sentence was not an 'error or defect' subject to reversal or modification.") (internal citations omitted); People v. Long, 85 A.D.3d 521, 522 (1st Dept. 2011) ("Lingle specifically prohibits both the resentencing court and this Court from revisiting the original, lawful sentence.")). Judge Noonan stated that Petitioner's "right to be heard and represented by counsel is only required where an additional term of post-release supervision is contemplated," whereas in Petitioner's case, Judge Noonan declined to impose a term of PRS. Id.

Petitioner sought leave to appeal the denial of his C.P.L. §§ 440.10 and 440.20 motions, which was denied on December 8, 2011,

-4-

by the Appellate Division, Fourth Department. Petitioner moved for reargument and reconsideration of the denial of the leave application, which was denied on December 8, 2011.

Petitioner also has challenged his resentencing by means of a direct appeal to the Fourth Department. Based upon Petitioner's latest submissions to this Court, it appears that the appeal is scheduled to be heard by the Fourth Department in February 2013.

On November 16, 2011, Petitioner again attacked his resentencing via a motion to dismiss the indictment pursuant to C.P.L. § 380.30(1), arguing that the trial court had been divested of jurisdiction to resentence Petitioner because of an allegedly unreasonable delay in sentencing him. The trial court denied the motion in a written decision and order, Resp't Ex. HHH, concluding that it had resentenced Petitioner within a reasonable time after DOCCS notified it of the defect in Petitioner's original sentence. The trial court noted that although Petitioner challenged the validity of the order resentencing him without a PRS term, the order had not been vacated or modified but rather had been honored by DOCCS. Id. Petitioner sought leave to appeal the denial of this motion, which was denied on January 26, 2012, because the trial court's order was not appealable. Petitioner moved for reargument of his motion, which was denied by the trial court on March 9, 2012.

Further details regarding the extensive procedural history in this matter are contained in Respondent's thorough Memorandum of Law (Dkt #34); Petitioner's various "exhaustion updates" (Dkt ##4, 5, 17, 20, 28, 36); and Magistrate Judge Bianchini's Report and Recommendation (Appendix I).

**E.    The 2011 Federal Habeas Proceeding**

In his amended habeas petition (Dkt #7) dated November 12, 2011, Petitioner asserts the following grounds for relief: he was entitled to be present at and to have counsel appointed for his resentencing (Ground One); his resentencing violated the Ex Post Facto Clause of the United States Constitution (Ground Two); his Confrontation Clause rights were violated because the prosecution admitted into evidence a ballistics report without having the report's author testify (Ground Three); the "administrative reviewer" of a drug analysis report did not testify, in violation of Petitioner's Confrontation Clause rights, and the report's preparer testified untruthfully (Ground Four); trial counsel erroneously stipulated to the admission of the ballistics report (Ground Five); the prosecution violated its disclosure obligations under the Due Process Clause by withholding several documents that Petitioner subsequently obtained through a Freedom of Information Law request (Ground Six); Petitioner is actually innocent of attempted first degree murder because the evidence did not establish that the weapons were operable or loaded with live

ammunition, and there was no evidence that a gun was fired (Ground Seven); the trial court erroneously declined to instruct the jury regarding the defense of extreme emotional disturbance, thereby violating Petitioner's right to a fair trial (Ground Eight); the trial court improperly refused to rule on the merits of a renewed omnibus motion because it was untimely (Ground Nine); the police violated Petitioner's Fourth Amendment rights by seizing marijuana from his residence (Ground Ten); the trial court erroneously failed to make a finding on the record that Petitioner was competent to stand trial (Ground Eleven); Inv. Stone's testimony established that he had tampered with the rifle before it was examined by the ballistics expert (Ground Twelve); the conviction for possession of marijuana was not supported by legally sufficient evidence and was against the weight of the credible evidence (Ground Thirteen); the remaining convictions were not supported by legally sufficient evidence and was against the weight of the credible evidence because the prosecution failed to present proof that the weapons were loaded with live ammunition, there was an absence of fingerprint proof that Petitioner had actual possession of a gun, and Petitioner's alleged intoxication and psychosis negated his ability to form the requisite intent (Ground Fourteen); Petitioner's statements to the police were taken in violation of his constitutional rights (Ground Fifteen); Petitioner's motion to suppress was erroneously denied without a hearing (Ground Sixteen);

Petitioner's Sixth Amendment right to a speedy trial was violated (Ground Seventeen); the indictment was defective because it failed to give notice of the charges against him (Ground Eighteen); the prosecution withheld documents from the Genesee County Sheriff's Department establishing Petitioner's mental illness (Ground Nineteen); the marijuana possession charge (count nine) was improperly joined in the indictment (Ground Twenty); the trial judge was biased and should have recused himself (Ground Twenty-One); the pre-sentence investigation report was inaccurate and "prosecuted" Petitioner so as to prevent him from ever being granted parole (Ground Twenty-Two); one of the jurors was biased due to his relationship with one of the victims, Dep. Duyssen (Ground Twenty-Three); pre-trial counsel Felix Lapine, Esq., and trial counsel David Morabito, Esq., were ineffective for numerous reasons (Ground Twenty-Four); Petitioner's direct appeal was unconstitutional because the court appointed ineffective appellate counsel (Ground Twenty-Five); and the Double Jeopardy Clause should apply to protect Petitioner from the alleged repeated errors by the Genesee County and New York state entities involved in his criminal prosecution (Ground Twenty-Six).

Petitioner has filed a motion (Dkt #14) to have these proceedings stayed and held in abeyance while he pursues a direct appeal in the Fourth Department regarding the 2011 resentencing. The Fourth Department has assigned counsel to represent him, but

this appeal addresses only the resentencing proceeding. Assigned counsel has refused Petitioner's request to attack the underlying conviction because such a challenge is impermissible under People v. Lingle, supra.

Petitioner also has filed a motion for sanctions and to have Respondent's affirmative defenses of non-exhaustion and procedural default struck because they were not properly asserted in Respondent's answer.

For the reasons discussed below, Petitioner's motion for a stay is denied, and Petitioner's motion for sanctions is denied. Because the Court has elected to consider all of Petitioner's claims on the merits, Petitioner's request to have Respondent's affirmative defenses struck is denied as moot. Petitioner's motion to amend is denied as futile. Finally, Petitioner's request for a writ of habeas corpus is denied, and the amended petition is dismissed.

**III. Motion for a Stay**

Petitioner has filed a motion (Dkt #14) to have the amended petition (Dkt #7) stayed and held in abeyance pending the outcome of his direct appeal in the Appellate Division, Fourth Department, of the 2011 resentencing. See Rhines v. Weber, 544 U.S. 269, 277 (2005) (approving of the stay-and-abeyance procedure described by the Second Circuit in Zarvela v. Artuz, 254 F.3d 374, 380

(2d Cir.), <u>cert.</u> <u>denied</u> <u>sub</u> <u>nom.</u> <u>Fischer v. Zarvela</u>, 534 U.S. 1015 (2001)).

In light of the total exhaustion requirement for federal habeas review, a district court faced with a habeas petition containing unexhausted claims generally has three options. First, the court may dismiss the unexhausted claims without prejudice. <u>See</u> <u>Rhines</u>, 544 U.S. at 273, 274. Second, the district court may deny–but not grant–a mixed petition on the merits. <u>See</u> 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); <u>see</u> <u>also</u> <u>Rhines</u>, 544 U.S. at 277 ("[T]he district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless"). Third, where an unexhausted claim is contained in a petition along with exhausted claims, a district court may either invite the petitioner to abandon the unexhausted claims and proceed with only the exhausted claims, or, in order to avoid foreclosing federal review of the unexhausted claims, the court may "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." <u>Rhines</u>, 544 U.S. at 275, 277–78.

In order to invoke the "stay-and-abeyance" procedure for a mixed habeas petition, a district court must first ensure that certain criteria are met. <u>See</u> <u>id.</u> at 277–78 (stating that "stay and

abeyance should be available only in limited circumstances"). Specifically, the court must ensure that (1) good cause exists for the petitioner's failure to exhaust his claims in state court; (2) the unexhausted claims are not "plainly meritless," and (3) the petitioner has not engaged in intentionally dilatory litigation tactics. Id.

As Respondent points out, the currently pending direct appeal is limited to issues concerning the 2011 resentencing. Respondent correctly argues that Petitioner cannot utilize this direct appeal to challenge any other aspect of his 2004 conviction, such as his unexhausted ineffective assistance of appellate counsel claims. See People v. Lingle, 16 N.Y.3d at 635-36 (holding that a defendant's right to appeal after a resentencing is "limited to the correction of errors or the abuse of discretion at the resentencing proceeding"); see also People v. Lakatosz, 89 A.D.3d 1329, 1330 (3d Dept. 2011). As noted above, Petitioner's assigned appellate counsel has declined to raise any claims pertaining to the underlying criminal conviction because such a challenge is expressly prohibited under current New York law. Any pro se attack on the 2004 conviction by Mills in connection with the direct appeal of his 2011 resentencing will be futile.

As discussed further below, the claims pertaining to the resentencing are not unexhausted, as they were raised in a C.P.L. §§ 440.10/440.20 motion, making the direct appeal arguably

redundant. Furthermore, the resentencing claims raise only non-cognizable issues of state law and, in any event, are plainly meritless.

Under these circumstances, it would be an abuse of this Court's discretion to employ the stay-and-abeyance procedure. See Rhines, 544 U.S. at 277 ("[T]he district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless"). Accordingly, the Court shall rely upon § 2254(b)(2) to deny Mills' petition in its entirety on the merits, notwithstanding the fact that it contains unexhausted claims.

The habeas statute does not articulate a standard for denying a petition containing unexhausted claims on the merits, and neither the Supreme Court nor the Second Circuit has established one. The rationale behind 28 U.S.C. § 2254(b)(2) has been described as "spar[ing] state courts from needlessly wasting their judicial resources on addressing meritless claims solely for the sake of exhaustion." Keating v. New York, 708 F. Supp.2d 292, 299 n. 11 (E.D.N.Y. 2010). On the other hand, comity demands that state courts be afforded the opportunity to pass upon any constitutional claim that is at least potentially meritorious before a federal habeas court decides it. See, e.g., Reid v. Angelone, 369 F.3d 363, 373 (4th Cir. 2004) (habeas court should not deny unexhausted claims if "reasonable jurists could debate" their merits).

In this Circuit, the various formulations for the proper standard to be used share "the common thread of disposing of unexhausted claims that are unquestionably meritless." Keating, 708 F. Supp.2d at 299 n. 11 (citing Williams v. Artus, 691 F. Supp.2d 515, 526-27 (S.D.N.Y. 2010) (relying upon 28 U.S.C. § 2254(b)(2) where unexhausted claims were "plainly meritless"); Robinson v. Phillips, No. 04-CV-3446 (FB), 2009 WL 3459479, at *1 (E.D.N.Y. Oct. 23, 2009) (relying upon 28 U.S.C. § 2254(b)(2) where unexhausted claims were "patently frivolous")). Here, invocation of 28 U.S.C. § 2254(b)(2) to deny Mills' amended petition containing unexhausted claims is appropriate given that the claims are unquestionably meritless, and their lack of merit is not subject to debate by reasonable jurists.

## IV. Merits of the Claims Raised in Petitioner's 2006 Habeas Petition and Re-Raised in this Proceeding

This Court has previously held that, pursuant to Magwood v. Patterson, ___ U.S. ___, 130 S. Ct. 2788, 2797, 2802 (2010), Mills' current habeas petition is not a second or successive petition within the meaning of 28 U.S.C. § 2244(b), despite the fact that it asserts numerous claims pertaining to the 2004 convictions that he was in the position to raise in 2006. See Dkt #19 at 18 ("Based upon the majority's holding in Magwood and upon the dissent's characterization of the scope of the majority's ruling, this Court concludes that the current habeas petition, filed after Petitioner's resentencing in state court, is not 'second or

successive' within the meaning of 28 U.S.C. § 2244(b), because there was a new, intervening judgment [i.e., the 2011 resentencing] between the first and second petitions.") (citations omitted).

In Magwood, the dissent raised concerns that a petitioner now may "reraise every argument against a sentence that was rejected by the federal courts during the first round of federal habeas review," 130 S. Ct. at 2810 (dissenting opn.). The majority characterized this as "hyperbolic[,]" noting that "[i]t will not take a court long to dispose of such claims where the court has already analyzed the legal issues." 130 S. Ct. at 2802 n.15.

Here, Magistrate Judge Bianchini and District Judge Arcara have already analyzed the legal issues concerning a number of the claims that Mills now re-asserts in the present amended habeas petition, namely Ground Ten (Fourth Amendment violations), Ground Thirteen (conviction for criminal possession of marijuana was against the weight of the evidence and unsupported by legally sufficient evidence; and trial counsel was ineffective in connection therewith), Ground Fourteen (the verdicts for attempted murder and assault were against the weight of the evidence and unsupported by legally sufficient evidence), Ground Seventeen (violation of Sixth Amendment right to a speedy trial), Eighteen (defective indictment), Ground Twenty (Count Nine was improperly joined), and Ground Twenty-One (judicial bias).

This Court reads the <u>Magwood</u> majority's comment in footnote 15, <u>see</u> 130 S. Ct. at 2802 n. 15, as sanctioning the summary dismissal of previously-raised habeas claims in a subsequent petition when such claims have already been analyzed by the federal court in an earlier petition. Here, in connection with Mills' 2006 habeas petition, Magistrate Judge Bianchini analyzed all of the claims listed in the foregoing paragraph on the merits under a <u>de novo</u> standard of review–the most favorable standard possible from a petitioner's standpoint–and found that they did not warrant habeas relief. District Judge Arcara adopted in full Magistrate Judge Bianchini's findings of fact and conclusions of law. The United States Court of Appeals for the Second Circuit dismissed Petitioner's appeal, agreeing that he had failed to make a substantial showing as to the denial of a constitutional right.

This Court has reviewed the pleadings and transcripts filed in both the 2006 and 2011 habeas proceedings, and concurs fully with Magistrate Judge Bianchini's and District Judge Arcara's disposition of the claims asserted in the 2006 petition. Accordingly, the Court dismisses Ground Ten (Fourth Amendment violations), Ground Thirteen (conviction for criminal possession of marijuana was against the weight of the evidence; unsupported by legally sufficient evidence; and trial counsel was ineffective in connection therewith), Ground Fourteen (the verdicts for attempted murder and assault were against the weight of the evidence and

unsupported by legally sufficient evidence), Ground Seventeen (violation of Sixth Amendment right to a speedy trial), Eighteen (defective indictment), Ground Twenty (Count Nine was improperly joined), and Ground Twenty-One (judicial bias), for the reasons stated in Magistrate Judge Bianchini's Report and Recommendation in Mills v. Poole, 1:06-cv-00842-RJA-VEB (W.D.N.Y. May 14, 2008).

## V.    Preliminary Matters Concerning the Newly Raised Claims

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to Mills' amended petition, filed in 2011. AEDPA "revised the conditions under which federal courts may grant habeas relief to a person in state custody." Kruelski v. Connecticut Superior Court for Judicial Dist. of Danbury, 316 F.3d 103, 106 (2d Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may grant a writ of habeas corpus under 28 U.S.C. § 2254 only if the state court's adjudication of the petitioner's claim on the merits ruling is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or involved an "unreasonable determination of the facts" in light of the evidence presented, 28 U.S.C. § 2254(d)(2). See also Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001) ("[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

The Second Circuit has stated that "it is often appropriate in considering a habeas petition under the AEDPA for the federal court to go through two steps: first, the court determines what the correct interpretation of Supreme Court precedent is; second, if the state court's understanding or application of that precedent is determined to be erroneous, the federal court must still ask whether that error was a reasonable one." Kruelski, 316 F.3d at 106; see also Messiah v. Duncan, 435 F.3d 186, 197 (2d Cir. 2006) ("We need not determine here whether Messiah's claims were adjudicated on the merits by the state courts, thereby triggering AEDPA review, because his claims would fail even if we apply the less deferential, pre-AEDPA standard.").

Here, the Court follows the suggestion set forth in Kruelski, determining first what the correct interpretation of Supreme Court precedent is and whether the state courts' rulings were correct in light of that interpretation. In other words, the Court initially views Mills' claims through a pre-AEDPA lens. As discussed more fully below, all of Mills' claims fail under this standard. Because they cannot pass muster under the pre-AEDPA standard, they necessarily cannot provide a basis for habeas relief under the more stringent, post-AEDPA standard of review.

**VI. Analysis of Merits of Claims Raised for the First Time in This Habeas Proceeding**

   **A. Constitutional Errors at Resentencing (Amend. Pet., Ground One)**

At Mills' original sentencing, the trial court imposed a fifteen-year determinate prison term on his conviction for attempted first degree assault. However, the trial court erroneously failed to impose a five-year period of post-release supervision, which was mandatory under P.L. § 70.45. Pursuant to P.L. § 70.85, the trial court was authorized to re-impose the original term of imprisonment without a term of PRS, upon the consent of the District Attorney's Office. However, the Penal Law provides no authority to modify any other aspect of a defendant's sentence. The District Attorney's Office agreed to the re-imposition of the original sentence without a term of PRS.

At resentencing, the trial court simply announced that Mills' originally imposed sentence would remain unchanged–that is, 15 years with no PRS.[1] Mills was not produced to appear in court. Mills now contends that he was denied his rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by being denied his right to be present at resentencing and to have counsel appointed.

---

[1]
    The resentencing is discussed in further detail in this Court's Order dated May 3, 2012 (Dkt #19), <u>Mills v. Lempke</u>, No. 1:11-CV-00440-MAT, 2012 WL 1574749, at *2-3 (W.D.N.Y. May 3, 2012).

The trial court, in rejecting Mills' constitutional claims on the merits, found that Petitioner could not be considered aggrieved given that it had *not* enhanced Petitioner's determinate sentence by imposing a term of PRS. Since Petitioner was not prejudiced by the resentencing, the trial court found, holding a hearing and appointing counsel would have been an unnecessary expenditure of public resources.

The trial court did not incorrectly apply federal law. As an initial matter, the First and Eighth Amendments are not implicated in this claim. At most, Petitioner's allegations raise issues under the Sixth Amendment and the Fifth Amendment as made applicable to the states via the Fourteenth Amendment.

The constitutional right to presence is largely based in the Confrontation Clause of the Sixth Amendment, e.g., Illinois v. Allen, 397 U.S. 337 (1970), although it also is "protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." United States v. Gagnon, 470 U.S. 522, 526 (1985) (citing Snyder v. Massachusetts, 291 U.S. 97, 105-06 (1934) (A defendant has a due process right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge. . . . [T]he presence of a defendant is a condition of due process *to the extent that a fair*

*and just hearing would be thwarted by his absence, and to that*
*extent only.*") (emphasis supplied)).

Contrary to Mills' contention, his presence would have added
nothing to the resentencing, which was essentially a non-event.
Mills received the same sentence that was originally imposed–a
determinate term of 15 years without any term of PRS. The only
difference was that the absence of a term of PRS in the new
sentence was legal, since the prosecution had consented to it.
Under these circumstances, Mills' personal attendance at the
resentencing was not constitutionally required. See Gagnon, 470
U.S. at 527 (holding that the presence of defendants and their
counsel at the in camera discussion with a juror and attorney for
one defendant; defendants "could have done nothing had they been at
the conference, nor would they have gained anything by attending")
(citing Snyder, 291 U.S. at 108).

The Court is hard-pressed to see how Mills' constitutional
rights were violated. Even where defendants have been defendants to
lengthier sentences, courts have found no constitutional infirmity.
See DeWitt v. Ventetoulo, 6 F.3d 32, 34 (1st Cir. 1993) ("The
Constitution contains no general rule that prohibits a court from
increasing an earlier sentence where the court finds that it was
erroneous and that a higher sentence was required by law. On the
contrary, this has occurred, and been upheld against constitutional
or other challenges. . . . [I]n principle, there is no difference

between such cases and a case like this one in which a sentence is reduced and later, finding the reduction to be unlawful, the court reinstates the original sentence.").

Finally, the New York Court of Appeals' decisions in <u>People v. Sparber</u>, 10 N.Y.3d 457, 465 (2008), and <u>Matter of Garner v. New York State Dept. of Corr. Servs.</u>, 859 N.Y.2d 590 (2008), stating that subject to limited exceptions, the defendant must be personally present at the time sentence is pronounced, do not assist Mills here. Those decisions were based solely upon commands contained in New York statutory law, namely, C.P.L. §§ 380.20 and 380.40(1), and not on constitutional grounds. It is beyond debate that a trial court's alleged breach of a state law is not cognizable in a federal habeas proceeding. <u>See</u>, <u>e.g.</u>, <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68 (1991) (citation omitted).

## B. Violation of Ex Post Facto Clause at Resentencing (Amend. Pet., Ground Two)

The Ex Post Facto provision of the Constitution, <u>see</u> U.S. CONST., art. I, § 10, bars any "enactments, which by retroactive operation, increase the punishment for a crime after its commission." <u>Garner v. Jones</u>, 529 U.S. 244, 249 (2000). The Ex Post Facto clause, however, does not apply here.

As noted above, P.L. § 70.45 mandates the imposition of a term of PRS where, as here, the trial court imposes a determinate prison term for a conviction of attempted first degree assault. This statute was in effect in 2001, when Petitioner committed the crimes

for which he was convicted and sentenced in 2004. However, Judge Noonan failed to impose any term of PRS when he sentenced Petitioner, and this rendered the sentence illegal.

In the interim, the Second Circuit specifically recognized that a term of PRS could be modified upon resentencing by the trial court. See Earley v. Murray, 462 F.3d 147, 149 (2d Cir. 2006). However, New York state law generally does not allow the court to sua sponte order a resentencing. See People v. Riggins, 164 A.D.2d 797, 797-98, 559 N.Y.S.2d 535, 536 (1st Dept. 1990). To deal with the confusion created by Earley, the New York Court of Appeals subsequently held that, where a trial court erroneously fails to pronounce a PRS term, the matter must be remitted for resentencing. E.g., People v. Sparber, 10 N.Y.3d at 465. Though both Sparber and Garner dealt with the legality of DOCCS' administrative imposition of PRS where the sentencing courts had failed to pronounce PRS as a part of a determinate sentence, neither was decided on constitutional grounds and neither cited Earley.

Sparber explained that C.P.L. § 380.20 and § 380.40 "collectively require that courts 'must pronounce sentence in every case where a conviction is entered' and that—subject to limited exceptions . . . '[t]he defendant must be personally present at the time the sentence is pronounced.'" Sparber, 859 N.Y.S.2d at 587. Sparber rejected the defendants' assertion, however, that the failure of the sentencing court to orally pronounce their PRS terms

at sentencing entitled them to have the PRS expunged from their sentences. Because of the mandatory nature of PRS, the defendants were not entitled to expungement, only resentencing. The failure of the court to pronounce the PRS term mandated by P.L. § 70.45(1) was described as "only a procedural error, akin to a misstatement or clerical error which the sentencing court could easily remedy." Sparber, 859 N.Y.S.2d at 589.

To deal with the issues created by Sparber and Garner, the New York State legislature enacted a provision authorizing a trial court to resentence a defendant, like Mills, to no term of PRS upon consent of the district attorney. See N.Y. PENAL LAW § 70.85. This option was invoked in Mills' case, in the form of an amended sentence and commitment order entered in 2011, stating specifically that Mills had been resentenced to the same determinate term of imprisonment with zero months of PRS.

As Respondent argues, Judge Noonan's subsequent resentencing of Mills pursuant to P.L. § 70.85 allowed Mills to lawfully maintain the more favorable–albeit illegal–sentence he originally received. Mills' punishment was *not* increased after his resentencing. The Ex Post Facto Clause simply is inapplicable here.

### C. Confrontation Clause Violation In Connection With Ballistics Report (Amend. Pet., Ground Three)

Mills contends that his rights under the Confrontation Clause of the Sixth Amendment were violated because the prosecution

introduced a ballistics report without also presenting the testimony of report's drafter, John Clark ("Clark").

"The Confrontation Clause of the Sixth Amendment provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" <u>Williams v. Illinois</u>, 132 S. Ct. 2221, 2232 (2012) (quoting U.S. CONST., amend VI). Here, however, it was the defense, rather than the prosecution, who introduced Clark's ballistics report for the purposes of showing that the rifle was not operable when it was first delivered to the laboratory for testing but was made operable after it was properly reassembled by laboratory personnel. The prosecutor was reluctant to agree to the stipulation because there already had been testimony that Inv. Stone jammed the rifle when he attempted to remove a bullet from the weapon immediately after the incident. The prosecutor preferred to call Clark as a witness rather than simply introducing his report. Defense counsel, citing convenience, wished to introduce the report only. Ultimately, the prosecutor agreed to the stipulation.

Mills' claim thus is wholly meritless. <u>See</u> <u>Williams</u>, 132 S. Ct. at 2242 ("Even if the Cellmark report had been introduced for its truth, we would nevertheless conclude that there was no Confrontation Clause violation. The Confrontation Clause refers to testimony by '*witnesses against*' an accused. Both the noted evidence scholar James Henry Wigmore and Justice Harlan interpreted

the Clause in a strictly literal sense as referring solely to persons who testify in court, but we have not adopted this narrow view.") (emphasis supplied); see also Bullcoming v. New Mexico, 564 U.S. ___, 131 S. Ct. 2705, 2710, 180 L.Ed.2d 610 (2011) (holding that a scientific report could not be used as substantive evidence against the defendant unless the analyst who prepared and certified the report was subject to confrontation).

**D. Confrontation Clause Violation in Connection with the Drug Analysis Report and Related Claim of Ineffective Assistance of Trial Counsel (Amend. Pet., Ground Four)**

    **1. Confrontation Clause Claim**

Mills claims that his Confrontation Clause rights were violated because the prosecution introduced a laboratory report concerning an analysis performed on the marijuana recovered from Mills' home. Mills contends that his right to confront witnesses was violated because Moses S. Schanfield, who merely signed the report as an "administrative reviewer", did not testify at trial.

Schanfield did not prepare the report; Kathleen McCully did. McCully, who actually performed the analysis, testified at trial concerning her methodology and her findings, and defense counsel fully cross-examined her. Schanfield merely signed the report as the administrative reviewer.

Even if Schanfield had testified instead of McCully, a Confrontation Clause issue would not necessarily have been raised. See Bullcoming, 131 S. Ct. at 2710. In Bullcoming, the prosecution

had introduced into evidence the results of a blood test through the testimony of a colleague of the actual analyst, and the colleague who testified "had neither observed nor reviewed [the primary author's] analysis." Id. at 2712. The Supreme Court held this substitute testimony of this colleague was not the equivalent of the actual analyst's for purposes of the Confrontation Clause. Id. at 2710. Whether a supervisor or reviewer, such as Schanfield, may be permitted to testify *in place of* the report's primary author under the Confrontation Clause "was therefore explicitly left open." Meras v. Sisto, 676 F.3d 1184, 1192 (9th Cir. 2012) (concurring opn.) (emphasis supplied). Here, however, McCully, the actual drafter of the report testified and was subject to cross-examination. Accordingly, Mills' Confrontation Clause rights were not violated.

### 2.  Ineffective Assistance of Trial Counsel Claim

In order to establish that he received the ineffective assistance of trial counsel, a petitioner must show that his attorney provided deficient representation, and that he was prejudiced as a result of counsel's shortcomings. See Strickland v. Washington, 466 U.S. 668, 687 (1984). The performance prong of Strickland requires a petitioner to show that "counsel's representation fell below an objective standard of reasonableness." Id. at 686. The prejudice prong requires a petitioner to show that there was a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Harrington v. Richter, 131 S. Ct. 770, 791-92 (2011) (quoting Strickland, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Harrington, 131 S. Ct. at 792.

Here, as discussed above, there was no violation of Mills' rights under the Confrontation Clause. Trial counsel's alleged omissions in regard to the report signed by Schanfield could not have any effect whatsoever on the verdict. Mills therefore is unable to demonstrate prejudice. Accordingly, his Strickland claim must fail. See 466 U.S. at 697 (A reviewing court need not address both of Strickland's prongs if, as is usually the case, the court can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice[.]").

E.   **Ineffective Assistance of Trial Counsel – Errors in Connection with the Evidentiary Stipulation (Amend. Pet., Ground Five)**

According to Mills, trial counsel was ineffective because he stipulated to the admission of the 911 tapes without explaining that Mills' right of confrontation was implicated, and that if

cross-examination of the witnesses on the tapes was not allowed, the tapes were inadmissible. Mills appeared on the tapes, along with Dep. Duyssen, who testified at trial and was available for cross-examination. Trial counsel had no legal basis on which to object to the prosecution's introduction of Mills' statements as they constituted admissions against a party opponent. See People v. Chico, 90 N.Y.2d 585, 589 (1997) ("[A]dmissions by a party of any fact material to the issue are always competent evidence against him, wherever, whenever, or to whomsoever made.").

Mills contends that he had the right to confront *everyone* involved in the making of the 911 tapes. However, the Confrontation Clause applies only to testimonial hearsay, e.g., Davis v. Washington, 547 U.S. 813, 821 (2006), and Mills has not established that testimonial hearsay was contained on the tapes. See Collins v. Berghuis, No. 09-cv-10627, 2012 WL 666517, at *17 (E.D. Mich. Feb. 29, 2012) ("The trial court admitted the [911] dispatcher's statement for a non-hearsay purpose, and instructed the jury that it could not be considered for its truth, and therefore the admission of the testimony did not violate the Confrontation Clause. The primary purpose of the dispatcher's statement identifying the source of the 911 call was to assist the police in responding to an ongoing emergency and was therefore non-testimonial.") (internal citations omitted).

**F.    Violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (Amend. Pet., Ground Six)**

Petitioner asserts that the prosecution violated its due process obligations under <u>Brady</u> by withholding certain documents that he asserts were favorable to the defense: (1) a Technical Reviewer checklist, (2) several Administrative Review checklists, (3) Firearms Evidence worksheets, (4) Dep. Duyssen's victim impact statement, and (5) intake reports completed during the booking process that document Petitioner's mental illness.

The prosecution's obligation pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83, is well-settled. "To the extent that [a] prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant." <u>Disimone v. Phillips</u>, 461 F.3d 181, 192 (2d Cir. 2006) (citations omitted). There are three components to a true <u>Brady</u> violation: (1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because of its impeachment value; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice resulted from the non-disclosure. <u>Banks v. Dretke</u>, 540 U.S. 668, 691 (2004) (citing <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999)).

Mills' contention that his rights under <u>Brady</u> were violated is specious. Apart from his self-serving and conclusory assertions, he has not established that any of the allegedly withheld documents

-29-

had exculpatory or impeachment value. As Respondent notes, the Technical Reviewer checklist, Administrative Review checklists, and Firearms Evidence worksheets are simply documents showing that the work of various laboratory analysts had been reviewed by supervisory personnel. See Record Volume ("RV") 3, Ex. 3 to Pet. (Dkt #1). The documents further show that the analysts had performed their work properly and that their findings were correct. Thus, the documents had no exculpatory or impeachment value and their disclosure was not required.

Indeed, the disclosure of the documents was not even required under state law because the preparers of those documents did not testify at trial. See People v. Rosario, 9 N.Y.2d 286, 289 (N.Y.) (requiring disclosure to defendant of any prior statement by a witness relating to the subject matter of the witness's testimony, regardless of the statement's value to the defense), cert. denied, 368 U.S. 866 (1961). It is well-established that Rosario defines a right broader in scope than Brady. E.g., Copes v. Schriver, No. 97 CIV. 2284(JGK), 1997 WL 659096, at *4 (S.D.N.Y. Oct. 22, 1997) ("Th[e] rule [under Rosario], however, is grounded in state law and a violation of the rule would not establish a constitutional violation or entitle the petitioner to relief on a petition for habeas corpus.") (internal citation and footnote omitted; citing United States ex rel. Butler v. Schubin, 376 F. Supp. 1241, 1247

(S.D.N.Y. 1974), aff'd without opinion, 508 F.2d 837 (2d Cir. 1975); Cruz v. Scully, 716 F. Supp. 766, 769 n. 5 (S.D.N.Y. 1989)).

Likewise, Mills cannot assert a Brady violation with respect to his own medical records. DOCCS provides inmates with access to their health records, and New York's Public Health Law protects an individual's ability to inspect or copy his medical records. See Pratt v. Goord, 20 A.D.3d 827, 827-28, 2005 N.Y. Slip Op. 06139 (3d Dept. 2005) ("Petitioner's related claim that he was entitled to access his medical records under the Freedom of Information Law is equally unavailing as the provisions of [N.Y.] Public Health Law § 18[(2)(e)] govern any effort by petitioner to inspect or copy his medical records[.]") (citations omitted). Thus, the jail records containing medical information collected during Mills' booking were not "suppressed" within the meaning of Brady.

With respect to the victim impact statement ("VIS") completed by Dep. Duyssen, the prosecutor informed the trial court that, notwithstanding Mills' insistence to the contrary, no such document was in his possession. If the prosecutor does not actually or constructively possess the alleged Brady material, he cannot suppress it. See Morgan v. Salamack, 735 F.2d 354, 358 (2d Cir. 1984) ("Clearly the government cannot be required to produce that which it does not control and it never possessed or inspected.") (citations and internal quotation omitted). Most important, Mills has not established the VIS's exculpatory or impeachment value.

Dep. Duyssen's comment to the effect that he did not see himself as a victim simply does not make the document exculpatory or imbue it with impeachment value. Thus, Mills cannot show that the withholding of this evidence, even assuming it had been withheld, caused him prejudice.

### G.    Actual Innocence (Amend. Pet., Ground Seven)

Petitioner relies upon the following statement made by Judge Noonan during the 2002 criminal proceedings to establish a claim of actual innocence: "I don't think pointing a loaded gun at somebody, even if it's operable, constitutes attempted murder." Amend. Pet., ¶ 159 (Dkt #7)(quoting "R2, ex. 6, pg. 13 (transcripts 2002)"). Petitioner goes on to state that there is "no scientific ballistics evidence at all what so ever [sic] to prove that the weapons were operable or dangerous and loaded with live ammunition." Id., ¶ 161 (Dkt #7). Petitioner asserts that "R2, ex. 3, pg. 23" is newly discovered evidence that the prosecution withheld, indicating that the gun was "'non-functioning' and was only test fired with laboratory ammunition, and no bullets were able to be tested, they broke up in the tank." Id. ¶¶ 162(A), (B). Petitioner also asserts that there were "no positive results for the marijuana[,]" proving that he is innocent of the drug-possession charge. Id., ¶ 163 (Dkt #7).

The Court agrees with Respondent that Mills' purported claim of actual innocence does not entitle him to habeas relief.

"[c]laims of actual innocence based on newly discovered evidence have never been held [by the United States Supreme Court] to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993). This stems from the well-settled principle that a habeas court is concerned "'not [with] the petitioners' innocence or guilt but solely [with] the question whether their constitutional rights have been preserved.'" Id. (quoting Moore v. Dempsey, 261 U.S. 86, 87–88 (1923)).

Here, the "newly discovered evidence" is not, in fact, "newly discovered" at all. The evidence regarding the inoperability of the weapon and the alleged lack of positive test results for the seized marijuana was available at the time of Mills' trial and presented to the jury. However, the jury rejected the arguments urged by trial counsel with regard to the inferences they should draw from the evidence. It is not the function of review courts on habeas review to second-guess the jury's assessment of the weight of the evidence and inferences to be drawn from that evidence. See, e.g., United States v. Rea, 958 F.2d 1206, 1221–22 (2d Cir. 1992) ("Matters of the choice between competing inferences, the credibility of the witnesses, and the weight of the evidence are within the province of the jury, and we are not entitled to second-guess the jury's assessments.")). Where, as here, the jury

acted rationally in coming to its verdict, there is no constitutional issue. Finally, Judge Noonan's comment in 2002 giving his opinion about what constitutes attempted murder obviously does not constitute newly discovered evidence of Petitioner's actual, factual innocence.

In short, Petitioner's claim of actual innocence is unsupported by the record. Moreover, there is no precedent for finding that actual innocence is a free-standing basis for federal habeas relief.

### H. Denial of the Right to Present a Defense and Denial of a Jury Instruction on Extreme Emotional Disturbance (Amend. Pet., Ground Eight)

Mills asserts that he was denied his due process right to a fair trial and to present a defense because the trial court refused to charge the jury on the defense of extreme emotional disturbance ("EED") with respect to the attempted murder charges and refused to give a special instruction regarding Mills' psychiatric condition as it related to the element of intent.

It is well-settled that the propriety of a state trial court's jury instructions is ordinarily a matter of state law that does not raise a federal constitutional question. E.g., Cupp v. Naughten, 414 U.S. 141, 146 (1973). When complaining that his constitutional rights were violated by the trial court's failure to give a particular jury instruction, the petitioner's burden is "especially heavy." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). The state

-34-

court's failure to give a particular jury instruction does not raise a federal question unless the error "so infected the entire trial that the resulting conviction violates due process." Id. at 147; see also, e.g., Jackson v. Edwards, 404 F.3d 612, 624 (2d Cir. 2005). An "omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law[.]" Henderson, 431 U.S. at 154.

The Court cannot say that the trial court erred as a matter of state law in declining to instruct the jury on the EED defense. EED can be an affirmative defense to first degree intentional murder where "[t]he defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." N.Y. PENAL LAW § 125.27(1)(a). Even assuming that Mills was suffering from an "extreme emotional disturbance," the evidence did not show that there was a "reasonable explanation" for it, as the trial court explained during the charge conference. Rather, the evidence showed that Mills believed that the police were entering the house to arrest him, and he wanted to prevent this. See Wilson v. Phillips, No. 05-CV-1208-ENV, 2010 WL 545862, at *7 (E.D.N.Y. Feb. 16, 2010) ("Wilson's actions after the crime, such as his failure to return home and denial of involvement in the shooting, also counsel

against EED.") (citing <u>Shiwlochan v. Portuondo</u>, 345 F. Supp.2d 242, 269 (E.D.N.Y. 2003) (explaining that "leaving the scene of the crime and taking other steps to avoid apprehension have been found to be inconsistent with the loss of control associated with an EED defense"); <u>People v. Roche</u>, 98 N.Y.2d 70, 77 (2002) (defendant's "presence of mind" to "contrive[ ] a false explanation for the victim's wounds" and "attempt to evade detection" was found to be "conduct inconsistent with the loss of self-control")).

Judge Noonan reasonably concluded that, while the psychiatric evidence was sufficient to permit the argument that Mills lacked the mental capacity to form the requisite intent to commit certain of the crimes charged, it was not sufficient to warrant a jury instruction on the EED defense. "In the absence of the requisite proof, an extreme emotional disturbance charge should not be given because it would invite the jury to engage in impermissible speculation concerning [the] defendant's state of mind at the time of the homicide." <u>Roche</u>, 98 N.Y.2d at 76 (citation omitted). "Notably, a defendant's outright claim of innocence cannot by itself defeat entitlement to the extreme emotional disturbance instruction." <u>Buckner v. Burge</u>, 2010 WL 1328982, at *6 (E.D.N.Y. Mar. 31, 2010) (citing <u>White</u>, 79 N.Y.2d at 903).

Even if the trial court improperly denied Mills' request for a supplemental intent or EED charge, that decision did not "'so infect[] the entire trial that the resulting conviction violates

due process.'" <u>Jackson v. Edwards</u>, 404 F.3d at 624 (quoting <u>Cupp</u>, 414 U.S. at 147); <u>see</u> <u>also</u> <u>id.</u> (noting that a due process violation occurs when the denial of a jury instruction was "'sufficiently harmful to make the conviction unfair'") (quoting <u>Davis</u>, 270 F.3d at 124); <u>Davis</u>, 270 F.3d at 131 (granting writ where denial of a jury instruction on justification "completely deprived Davis of his highly credible defense to the homicide charge and guaranteed his conviction"). Here, Mills was not "completely deprived" of the EED defense, since the jury could rely on defense counsel's arguments in to determine if, and to what extent, Mills' psychiatric condition affected his ability to form the intent necessary to satisfy the elements of the relevant crimes.

Furthermore, the defense was not "highly credible." As discussed above, the evidence established that Mills' criminal conduct was motivated by his desire to hold off the police and avoid apprehension. He deliberately ordered all officers except for Dep. Duyssen, who happened to be a family friend, to stay away from the house, which demonstrated that he was capable of making a rational decision. Thus, even if the trial court's denial of the instruction were erroneous, that error did not deprive Mills of a defense on which he was likely to prevail. <u>See</u> <u>Buckner</u>, 2010 WL 1328982, at *10 ("The denial did not ensure his conviction, nor was the denial in any sense 'catastrophic.' <u>Davis</u>, 270 F.3d at 132. Thus, even were Buckner entitled to the instruction, which the

Court finds he was not, the absence of the extreme emotional disturbance instruction did not render the trial unfair in any constitutional sense.").

**H. Erroneous Denial of Petitioner's Second Omnibus Motion (Amend. Pet., Ground Nine)**

Petitioner contends the trial court improperly denied as untimely Attorney Morabito's supplemental omnibus motion. As Respondent explains, Petitioner was granted a hearing on his supplemental omnibus motion, and Attorney Morabito noted that Judge Noonan had granted permission to address the suppression of the marijuana evidence. However, Judge Noonan ultimately denied the suppression motion as untimely. <u>See</u> Resp't Ex. T at 114-15.

Here, Petitioner argued the merits of his suppression issues on direct appeal and clearly received a full and fair opportunity to litigate his Fourth Amendment claims in the state courts. The Supreme Court has held that where, as here, "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." <u>Stone v. Powell</u>, 428 U.S. 465, 481-82 (1976).

**I. Violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) (Amend. Pet., Ground Fifteen)**

Mills contends that his statements to the police should have been suppressed because they were taken in violation of his <u>Miranda</u>

rights. However, the prerequisites of a valid <u>Miranda</u> claim are absent in this case.

<u>Miranda</u> held that "preinterrogation warnings are required in the context of *custodial interrogations* given 'the compulsion inherent in custodial surroundings.'" <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 661 (2004) (quoting <u>Miranda</u>, 384 U.S. at 458) (emphasis supplied). The Supreme Court explained in <u>Miranda</u> that "custodial interrogation" meant "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444; <u>see</u> <u>also</u> <u>Thompson v. Keohane</u>, 516 U.S. 99, 112 (1995).

The Court agrees with Respondent that the circumstances of this case demonstrate most clearly that Mills was not in custody when the police came to his father's house. Importantly, Dep. Duyssen, who was a friend of Petitioner's family, came to the scene *at Petitioner's request*. Petitioner in fact threatened to shoot anyone other than Dep. Duyssen who approached the house.

Before Dep. Duyssen even entered the house, he spoke on the phone to Petitioner, who told him that he was in possession of several loaded guns. Petitioner gave Dep. Duyssen permission to enter the house, where Dep. Duyssen found Petitioner sitting at a table with a shotgun, ammunition, and a bottle of whiskey. Petitioner explained to Dep. Duyssen that he had been using drugs,

that he suffered from bipolar disorder, and that he was upset over his failed marriage and his financial troubles.

As Petitioner and Dep. Duyssen were speaking, Petitioner observed Inv. Stone approaching the house. Upset that the officers had ignored his demand to stay back, Petitioner pointed a rifle at him and announced that he was going to shoot him in the head. Dep. Duyssen leapt up and attempted to wrest the weapon away from Petitioner. As the situation deteriorated, Dep. Duyssen called for help, and the other officers rushed in to assist him. During the ensuing melée, Petitioner exclaimed that the safety was off the weapon. A bullet was fired, narrowly missing Dep. Duyssen's head.

As Respondent notes, Petitioner's statements were made either before he committed the crimes, or during the commission of them. Under no view of the evidence could it reasonably be said that Petitioner was in police custody when he made the challenged statements. To the contrary, he essentially was holding Dep. Duyssen hostage. Because Petitioner was not subjected to custodial interrogation, he was not entitled to receive <u>Miranda</u> warnings, and the statements were properly admitted at trial.

### J. Failure to Hold Hearing Pursuant to <u>People v. Huntley</u>, 15 N.Y.2d 72 (1965)

Petitioner contends that his rights to due process, equal protection of the laws, effective assistance of trial, and a fair trial were violated by the trial court's failure to hold a <u>Huntley</u> hearing. As an initial matter, a defendant is not entitled to a

hearing pursuant to People v. Huntley to determine the voluntariness of his statements to the police as a matter of right. E.g., People v. Buckman, 70 Misc.2d 220, 221 (N.Y. Co. Ct. 1972) ("The statute, [N.Y. Crim. Proc. Law §] 710.60(1), provides that the defendant, moving for suppression, must, in writing, [s]tate the ground or grounds of the motion [a]nd set forth [s]worn allegations of fact supporting such grounds."). Here, there was no legal basis to hold a Huntley hearing because, as discussed above, Petitioner's statements to the police were made prior to, or during the commission of, the crimes for which he was indicted. Consequently, they were not "suppressible upon motion" by the defense. Holding a hearing regarding Petitioner's statements at the time he committed the crimes would have been futile and certainly would not have changed the outcome of the trial.

### K. Ineffective Assistance of Trial Counsel (Amend. Pet., Ground Twenty-Four)

#### 1. Pre-Trial Counsel (Attorney Lapine)

##### a. Failure to Move to Suppress the Marijuana Seized at Petitioner's House

After Petitioner was arrested at his father's house, where he had the stand-off with the police, he requested that the officers bring him to his own home so that he could retrieve his psychiatric medication. When the officers escorted Petitioner into his house, they observed marijuana (aggregating 1.27 pounds) in open view throughout the residence. They, quite properly, seized it. There is

no reasonable probability that any motion to suppress the marijuana would have succeeded. Counsel cannot be found ineffective on the basis that he failed to raise a non-meritorious claim or motion. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999), cert. denied, 531 U.S. 811 (2000).

### b. Misplacing of a C.P.L. § 730 Competency Examination Report

Petitioner contends that Attorney Lapine was ineffective because he supposedly lost one of his client's C.P.L. § 730 competency examination reports. At a pre-trial appearance on August 25, 2004, Attorney Lapine stated that he did not have a copy of the report, noting that it possibly had been misfiled. The trial court provided Attorney Lapine with another copy of the report. Misplacing a report that was easily replaced does not establish that Attorney Lapine was professionally unreasonable. Moreover, there is a singular absence of prejudice in connection with the allegedly missing report. When Attorney Morabito took over the defense, Petitioner underwent further psychiatric review. Both examiners concluded that Petitioner was mentally fit to participate in his trial.

### c. Improper Release of Psychiatric Records to the Court

Petitioner faults Attorney Lapine for allowing his psychiatric records to be released to the trial court. This claim is nonsensical given that Petitioner has consistently urged every

court to find him to be incompetent to stand trial because of his mental illness.

### d. Failure to Move to Suppress Petitioner's Statements to the Police

Petitioner asserts that Attorney Lapine was professionally unreasonable in failing to move to suppress Petitioner's statements to the police on the grounds of mental incompetence and intoxication. As discussed above, Attorney Lapine did move to suppress the statements made by Petitioner during the incident, albeit on different grounds. The motion to suppress was denied not because meritorious arguments were omitted by Attorney Lapine, but because there were no statements that could have been the proper subject of a suppression motion, i.e., statements for which the prosecution had been required to serve notice pursuant to C.P.L. § 710.30. Therefore, Petitioner cannot demonstrate how he was prejudiced by Attorney Lapine's failure to seeks suppression of his statements on the purported bases of mental incompetence and intoxication.

### 2. Trial Counsel (Attorney Morabito)

### a. Failure to Call an Expert Regarding Petitioner's Competency

Petitioner contends that Attorney Morabito should have called a medical expert to present his defenses of intoxication and extreme emotional disturbance. "[T]here is no _per se_ rule that requires trial attorneys to seek out an expert." <u>Gersten v.</u>

<u>Senkowski</u>, 426 F.3d 588, 609 (2d Cir. 2005). Rather, "[c]ounsel [is] entitled to formulate a strategy that [is] reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." <u>Richter</u>, 131 S. Ct. at 789. "The decision not to call a particular witness is typically a question of trial strategy that courts are ill-suited to second guess . . . [C]ounsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional judgment," <u>Greiner v. Wells</u>, 417 F.3d 305, 323 (2d Cir. 2005) (internal citations and quotations omitted).

Mills has not come forward with affidavits or other admissible evidence showing that there was, indeed, an expert witness who would have testified as he hoped. Notably, all of the psychological experts who examined Petitioner prior to trial determined that he was mentally competent to participate in his defense. Mills' assertions of prejudice are based purely upon his own self-serving speculation.

Even without an expert, trial counsel was able to put forward a defense based on Mills' intoxication and mental illness through other proof, such as Mills' own admissions; Mrs. Mills' testimony regarding her son's extensive history of mental illness; testimony from Inv. Stone and Deputies Duyssen and Weis about their having been summoned because there was a report of person with bipolar

disorder who was threatening suicide; and testimony from Dep. Duyssen that when he arrived at the house, Petitioner had a half-full whiskey bottle on the table in front of him.

> **b.  Failure to Object to Introduction of Petitioner's Statements to Police on Hearsay Grounds**

Petitioner asserts that Attorney Morabito was ineffective in failing to object to the introduction of Petitioner's statements to the police on the basis that they were inadmissible hearsay. Contrary to Petitioner's contention, Attorney Morabito had no colorable legal argument to make in this regard, as Petitioner's spontaneous, non-custodial statements to the police were properly introduced by the prosecution as admissions against a party opponent. See People v. Chico, 90 N.Y.2d 585, 589 (1997) ("'[A]dmissions by a party of any fact material to the issue are always competent evidence against him, wherever, whenever, or to whomsoever made[.]'") (quotation omitted); FED. R. EVID. 801(d)(2)(A) ("Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay: . . . (2) An Opposing Party's Statement. The statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity. . . .").

> **c.  Failure to Object to Inv. Stone's Testimony**

Petitioner argues that Attorney Morabito was ineffective in failing to object to Inv. Stone's testimony regarding the

ballistics test, on the basis that it violated Petitioner's rights under the Confrontation Clause. As discussed above, there was no Confrontation Clause violation in connection with Inv. Stone's testimony. Accordingly, Attorney Morabito did not err in failing to object, and any objection would have been overruled. Thus, Petitioner suffered no prejudice.

### d. Failure to Request a Missing Witness Charge for John Clark

Petitioner contends that Attorney Morabito should have requested an adverse inference jury charge based upon the prosecution's failure to call John Clark, the preparer of the ballistics report. As discussed above, at Attorney Morabito's request, and contrary to the prosecution's preference, the ballistics report was admitted into evidence without the necessity of calling Clark. This was part of the defense strategy to cast doubt upon the operability of the rifle, since the firearm's operability was a necessary element of the crimes with which Petitioner was charged. Thus, trial counsel was not ineffective.

### e. Failure to Object to Kathleen McCully's Testimony

Petitioner argues that Attorney Morabito was ineffective in failing to object to Kathleen McCully's testimony regarding the tests she performed on the seized marijuana, on the basis that it violated Petitioner's rights under the Confrontation Clause. As discussed above, there was no Confrontation Clause violation.

Moreover, McCully was subjected to cross-examination by Attorney Morabito. This claim plainly is without merit.

### f.    Errors Regarding the 911 Tapes

Petitioner argues that Attorney Morabito was ineffective for failing to allow him to listen to the 911 tapes prior to trial. In addition, he faults counsel for stipulating to the admission of the tapes without explaining that the tapes were inadmissible as violative of his Confrontation Clause rights.

Petitioner's claim is factually baseless. The record shows that before the 911 tapes were admitted, Petitioner had heard them and had received a copy of the transcripts of the tapes. Petitioner noted on the record that some parts of the tape were inaudible, which he could not have known had he not listened to the tapes. Furthermore, trial counsel asked Petitioner on the record whether he had any questions about the tapes, and Petitioner answered no. Petitioner then told counsel on the record that he had his own copy of the transcript of the recordings and expressed his understanding that both the tapes and the transcript would be admitted into evidence.

Trial counsel's decision to admit them was reasonably made in furtherance of a consistent and plausible strategy–namely, to show that Petitioner was an extremely mentally disturbed person who became suicidal after his propane tanks had been repossessed. Counsel utilized the tapes to support his argument that Petitioner

lacked the mental ability to form the intent necessary for the crimes with which he had been charged.

### h. Failure to Request Adverse Inference Instruction

Petitioner faults Attorney Morabito for failing to ask the trial court to instruct the jury that it could draw an adverse inference based upon Inv. Stone's tampering with the rifle. However, as explained above and as the testimony makes clear, Inv. Stone did not "tamper" with the rifle but instead disassembled the loaded weapon because it had jammed. Even if trial counsel sought such a charge, it would not have been granted because there was no reasonable view of the evidence that would support it. See People v. Bailey, 24 A.D.3d 106, 106 (1st Dept. 2005) ("[A]n adverse inference instruction was not required since there was no bad faith on the part of the People [in failing to preserve a 911 tape] and defendant was not prejudiced.") (citation omitted), habeas corpus denied, Bailey v. Ercole, No. 06 Civ. 5811(PKC)(MHD), 2007 WL 4707738, at *9, *11 (S.D.N.Y. Aug. 17, 2007).

### i. Failure to Move to Dismiss on State Speedy Trial Grounds

Petitioner claims that trial counsel erred in failing to file a motion to dismiss on state speedy trial grounds, C.P.L. § 30.30. However, the record indicates that Petitioner filed a pro se motion to dismiss the indictment pursuant to C.P.L. § 30.30, which Attorney Morabito adopted the motion on the eve of trial. Judge

Noonan calculated that only 39 days were chargeable to the prosecution for purposes of C.P.L. § 30.30 and accordingly denied the motion. Petitioner thus cannot establish that trial counsel erred in the manner he contends, or that he was prejudiced by counsel's performance.

### j. Failure to Challenge Inaccuracies in Pre-Sentence Investigation Report

Petitioner argues that trial counsel was ineffective for failing to challenge what he characterizes as grossly prejudicial inaccuracies contained in the PSIR. As explained below, Petitioner has not established that there were inaccuracies, much less any of constitutional magnitude. It bears emphasizing that Petitioner, who has never shown a reluctance to address the court himself, failed to raise these purported inaccuracies when he had the opportunity to do so. This claim is patently frivolous.

### k. Cumulative Effect of Counsel's Alleged Errors

"[T]he accumulation of non-errors does not warrant a new trial." United States v. Lumpkin, 192 F.3d 280, 290 (2d Cir. 1999) (citation omitted). Here, as discussed above, the deficiencies attributed to Petitioner's pre-trial counsel and trial counsel were not in fact errors at all. Thus, considering them in the aggregate does not change this Court's conclusion that Mills received effective assistance as guaranteed by the Sixth Amendment throughout his criminal proceedings.

Moreover, the record demonstrates that Mills' pre-trial and trial attorneys were effective overall, mounting a consistent and cogent defense that there was insufficient evidence of intent for the most serious criminal charges due to Petitioner's mental health issues, intoxication, and marijuana use. Notably, the jury was persuaded to acquit Petitioner on several of the top counts of the indictment, the attempted first-degree murder against Dep. Duyssen, as well as the lesser-included attempted second-degree murder charge, and the attempted first-degree assault charges involving Deputies Duyssen and Weis. Counsels' zealous advocacy on Petitioner's behalf spared him exposure to additional, possibly consecutive, sentences.

## L. Erroneous Probation Report (Amend. Pet., Ground Twenty-Two)

Petitioner argues that he is entitled to habeas relief because the PSIR prepared by the probation department contained numerous mistakes with regard to his pedigree information, the identity of his attorney, the charges against him, his drug use, his biographical background and medical history, and the nature of the crimes for which he was tried. Petitioner further asserts that he was not permitted to file a memorandum to be attached to the report.

For due process to be offended by errors in a PSIR, and the drastic relief of resentencing or reversal to be warranted, the error in the report must amount to "misinformation of a

constitutional magnitude." <u>United States v. Tucker</u>, 404 U.S. 443, 447 (1972). Plainly, this was not the case here. The Court finds it noteworthy that Petitioner, when he addressed Judge Noonan at his initial sentencing, did not raise any objections to the PSIR. This claim is specious and must be dismissed.

**M.   Juror Bias (Amend. Pet., Ground Twenty-Three)**

Mills claims that he was denied his right to a fair trial by a panel of impartial jurors, <u>see</u> <u>Turner v. Louisiana</u>, 379 U.S. 466 (1965), because one of the jurors, Murray Mamau, knew Dep. Duyssen from church.

It bears noting that judicial scrutiny of counsel's performance must be "highly deferential." <u>Strickland</u>, 466 U.S. at 689. Trial counsel is "accorded particular deference when conducting voir dire[,]" and "[a]n attorney's actions during voir dire are considered to be matters of trial strategy." <u>Hughes v. United States</u>, 258 F.3d 453, 457 (6th Cir. 2001) (citing <u>Nguyen v. Reynolds</u>, 131 F.3d 1340, 1349 (10th Cir. 1997) (citation omitted)). "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." <u>Hughes</u>, 258 F.3d at 457 (citation omitted).

Here, trial counsel mounted successful challenges-for-cause with regard to six prospective jurors who expressed actual concerns about their ability to be impartial. Mamau, on the other hand,

expressed no such concerns. When the trial court asked Mamau if he had any preconceived opinions as to Dep. Duyssen's credibility as a witness, he responded that he had none. Mamau assured Judge Noonan that he could be fair and objective. When trial counsel questioned the prospective jurors, he asked Mamau if he would simply accept Dep. Duyssen's testimony as above reproach, or if he would keep an open mind. Mamau replied that he would keep an open mind. Trial counsel's decision not to challenge Mamau certainly was not objectively unreasonable, particularly in light of Mamau's consistent responses that he could be fair and impartial, and would not assign undue weight to Dep. Duyssen's testimony based upon the fact they were acquaintances or based upon Dep. Duyssen's status as a police officer.

Where, as here, a petitioner asserts a claim of ineffective assistance based on trial counsel's failure to challenge a prospective juror during voir dire, the petitioner must show that the prospective juror was actually biased against him. Murphy v. Florida, 421 U.S. 794, 800 (1975). Here, as noted above, neither actual nor implied bias is detectable in Mamau's voir dire responses. Because Petitioner cannot establish that Mamau was biased against him, he cannot establish that he was prejudiced by counsel's failure to challenge Mamau's seating on the jury panel.

### N. Denial of Right to Appeal and Ineffective Assistance of Appellate Counsel (Amend. Pet., Ground Twenty-Five)

#### 1. Denial of Right to Appeal

Petitioner argues that the Appellate Division deprived him of his constitutional right to an appeal by having Randolph Zickl, the Genesee County Assigned Counsel Administrator, assign Del Atwell, Esq., as his appellate counsel. Randolph Zickl happens to be Judge Noonan's cousin. Two of Randolph Zickl's brothers are assistant district attorneys in Genesee County. According to Petitioner, the Zickl brothers and Judge Noonan have formed a cabal to violate his constitutional rights.

Federal district courts cannot grant habeas relief based upon unsubstantiated surmise, opinion or speculation. See Wood v. Bartholomew, 516 U.S. 1, 8 (1995) (federal courts may not grant "habeas relief on the basis of little more than speculation with slight support"). Mills' claim of an official conspiracy is based upon nothing more than rank speculation with no record support. Accordingly, it cannot provide a basis for habeas relief. See, e.g., Youngblood v. Conway, 426 F. Supp.2d 107, 125 (W.D.N.Y. 2006) (because petitioner's claim was "based on nothing more than mere speculation, it cannot provide a basis for habeas relief"); Osinoiki v. Riley, CV-90-2097, 1990 WL 152540, at *3 (E.D.N.Y. Sept. 28, 1990) (denying petition for writ of habeas corpus, where, inter alia, two of petitioner's bases for relief were based on "nothing more than rank speculation").

## 2. Ineffective Assistance of Appellate Counsel

Petitioner faults his first appellate counsel, Attorney Atwell, for emphasizing trial evidence that should have been suppressed and misstating facts in a way that was prejudicial to Petitioner's case. Petitioner complains that his second appellate attorney, Fred Rearick, Esq., was ineffective because he "allowed" the Appellate Division to find that the insufficient evidence claim was unpreserved, did not file a motion to reargue, and did not seek leave to appeal to the New York Court of Appeals.

Strickland's two-pronged standard also applies to appellate counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.) (citation omitted), cert. denied, 513 U.S. 820 (1994). It is not sufficient for a petitioner to show that appellate counsel omitted a colorable argument, as counsel is not required to raise all colorable, nonfrivolous claims on appeal. Jones v. Barnes, 463 U.S. 745, 751 (1983). Rather, a petitioner must demonstrate that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000). To satisfy the prejudice prong of Strickland in the context of ineffective assistance of appellate counsel, a petitioner must show that absent counsel's deficient performance, there was a reasonable probability that his appeal would have been successful before the state's highest court. Mayo, 13 F.3d at 534.

Petitioner contends that Attorney Atwell he effectively "prosecuted" him by referring to inadmissible hearsay evidence, i.e., by including in the recitation of facts the testimony that "Mills warned [that] the safeties of both guns were off". Amend. Pet. at 86 (quotation to record omitted) (Dkt #7). As discussed above, Mills' statements during the incident were properly introduced by the prosecution as admissions by a party opponent and were *not* inadmissible hearsay.

Petitioner also contends that Attorney Atwell "twisted the facts" by stating that "a bullet was in fact discharged in the kitchen. The rifle bullet was later recovered from the kitchen ceiling." Id. (quotation to record omitted). Petitioner "challenges" Respondent to "provide any transcript page or other evidence where a bullet was ever recovered from the ceiling[.]" Id. Whether or not a bullet was recovered from the ceiling was entirely immaterial to the prosecution's case against Petitioner. Identity was not in issue, that is, the prosecution did not need to match a bullet to a particular weapon so as to identify the person who attacked the police deputies.

In any event, this comment was not prejudicial to Petitioner's case. It was made in the context of Attorney Atwell's argument that the verdict for attempted murder of Inv. Stone was against the weight of the evidence because there was no evidence of intent to kill Inv. Stone. Attorney Atwell properly emphasized that the gun

discharged incidentally to Petitioner's struggle with Dep. Duyssen. Notably, the jury acquitted Petitioner of the attempted murder of Dep. Duyssen.

Unsatisfied with the brief filed by Attorney Atwell, Petitioner's family retained Attorney Rearick to represent their son. Petitioner contends that Attorney Rearick was ineffective in failing to seek reargument on the basis that the Appellate Division erroneously found that Petitioner's legal insufficiency claim was unpreserved. Even if Attorney Rearick had made such a motion, there is no reasonable probability that it would have had an effect on Petitioner's appeal. The Appellate Division considered the substance of the legal insufficiency claim in the alternative and found it to be meritless.

Mills also asserts that Attorney Rearick "filed no papers to the court of appeal to petitioners [sic] knowledge." Amend. Pet. at 87. Assuming that Attorney Rearick erred as Mills contends, the Court cannot find that prejudice resulted since Mills himself filed a leave application to the New York Court of Appeals with regard to the claims raised in his pro se brief and by Attorney Atwell.

In sum, neither of Mills' appellate attorneys provided deficient representation. Moreover, Mills was not prejudiced by any of appellate counsels' alleged errors which were not, in fact, errors at all.

**O.  Double Jeopardy (Amend. Pet., Ground Twenty-Six)**

Mills argues that the Fifth Amendment's Double Jeopardy Clause should protect him from what he describes as the repeated and vindictive errors by the trial court and the prosecution. As Respondent notes, Petitioner's specific complaints are unclear. Liberally construed, his allegations appear to allege that he was erroneously retried in 2004 after he successfully moved to vacate his guilty plea and that, in 2011, he was resentenced illegally.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST., amend. V. "Under this Clause, once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense." Sattazahn v. Pennsylvania, 537 U.S. 101, 106 (2003). The law is well-settled that when a defendant wins reversal of his conviction, the Double Jeopardy Clause does not bar retrial. E.g., North Carolina v. Pearce, 395 U.S. 711, 719-720 (1969); see also Sattazahn, 537 U.S. at 115 (finding that prospect of second capital sentencing proceeding, which arose when defendant who was convicted of murder and sentenced to life imprisonment under Pennsylvania law after jury deadlocked at first capital-sentencing proceeding successfully appealed conviction, did not implicate any of perils against which the Double Jeopardy Clause sought to protect).

Here, after Mills initially pleaded guilty to a Superior Court Information of attempted murder and related charges, *he himself* successfully moved to vacate judgment on the ground that New York law forbids a defendant to waive a grand jury indictment to a class A felony. His success in vacating his conviction permitted the prosecutor to obtain an indictment charging him for the attempted murder and related charges.

After he was convicted the second time, the trial court imposed a determinate sentence but erroneously omitted a mandatory term of PRS. When Mills was resentenced pursuant to P.L. § 70.85, the prosecutor consented to the omission of a term of PRS. Thus, Mills' sentence after resentencing was exactly the same, except that the absence of a PRS term now was lawful based upon the prosecutor's consent. In other words, Mills was permitted to maintain a sentence that was more lenient than that to which he was otherwise entitled. Indeed, Mills' contentions defy logic. His Double Jeopardy claims have no basis in law or fact, and habeas relief is therefore unavailable.

## V.    Petitioner's Other Motions

Petitioner has moved to have Respondent held in contempt and sanctioned (Dkt # 35). Petitioner's request for sanctions is patently frivolous. The Court denies Petitioner's request to have Respondent provide him with copies of all of the state court records in this case since Petitioner indicates in his pleadings

that he already has copies of the documents he is demanding. Petitioner's request, in his motion for sanctions, to strike Respondent's affirmative defenses for failure to raise them properly in an answer is moot since this Court has considered all of Petitioner's habeas claims on the merits.

Petitioner also has moved to further supplement his petition (Dkt # 37) with what appear claim identical to those asserted in his amended petition. This motion is futile since the claims he seeks to add are duplicative of the claims already asserted and have been found to be meritless by this Court, see supra.

## VI. Conclusion and Orders

After considering Petitioner's amended petition under a de novo, pre-AEDPA standard of review, the Court finds that Petitioner has failed to meet his burden of demonstrating a violation of his constitutional rights. See Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Accordingly, it is **ORDERED** that the amended petition (Dkt #7) in this matter is **DENIED** and **DISMISSED;** and it is further

**ORDERED** that Petitioner's motion for a stay (Dkt #14) is **DENIED** and **DISMISSED;** and it is further

**ORDERED** that Petitioner's motion for sanctions and miscellaneous relief (Dkt # 35) is **DENIED** and **DISMISSED;** and it is further

**ORDERED** that Petitioner's motion to file a supplemental petition (Dkt # 37) is **DENIED** and **DISMISSED;** and it is further

**ORDERED** that a certificate of appealability shall not issue with respect to any of the claims set forth in the Petition as Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     February 4, 2013
           Rochester, New York.

# APPENDIX I